UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ACTION INK, INC., a Louisiana corporation, | ) ) ) | Case No.: |
| Plaintiff, | ) ) ) | **COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE** |
| vs. | ) ) ) | **DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION** |
| NEW YORK JETS, LLC, a New York limited liability company, and ARKADIUM, INC., a New York corporation, | ) ) ) ) | |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |

---

## COMPLAINT

Plaintiff Action Ink, Inc. ("Action Ink"), by its attorneys, and for its Complaint against defendants New York Jets, LLC, ("NY Jets"), and Arkadium, Inc. ("Arkadium"), states as follows:

### I. NATURE OF THE ACTION

1.  This action arises from defendants' recent and pervasive efforts to infringe plaintiff's distinctive, federally registered, and incontestable Mark, THE ULTIMATE FAN (the "Mark"), and to interfere with plaintiff's expansion into new markets through acts of unfair competition. Defendants' actions result in a likelihood of both direct confusion and reverse confusion causing Plaintiff to lose value in its brand at the expense of a much junior user.

2.  Action Ink is a sports marketing firm that has used the THE ULTIMATE FAN Mark in U.S. commerce continuously since 1983 in connection with the services of promoting the goods and/or services of others by conducting a

contest at sporting events.   On July 9, 1985, the United States Patent and Trademark Office issued U.S. Registration No. 1348458 (the "Registration") to Action Ink for THE ULTIMATE FAN Mark in connection with these services, and Action Ink has maintained and renewed the Registration as required, and is now incontestable pursuant to Section 15 of the Lanham Act. Additionally, Action Ink licenses the Mark to third parties and provides other promotional and marketing services for a fee. Action Ink has expended considerable time and resources in promoting the Mark and, as a result of these efforts, has established significant local recognition and goodwill throughout this District.

3.     Action Ink is the senior user of the Mark and has an incontestable registration for the Mark; however, defendants' large scale use of the virtually identical ULTIMATE FAN Mark is creating the false impression that defendants are the senior users or own the Mark, resulting in reverse confusion.  Indeed, at least as early as September 2010, without authorization from Action Ink, defendants began using the words "Ultimate Fan" in connection with their online "App," or web application, which allows sports fans to compete in a contest for prizes against other sports fans in an atmosphere made to simulate being at a National Football League game. Users can host online tailgate parties and rate players online while games are being played in real-time.  The App also promotes the goods and services of others, *e.g.* by allowing users to compete on behalf of their favorite sports teams.  Hence, defendants' App is essentially an electronic version of Action Ink's Ultimate Fan contest, *i.e.* a contest occurring in connection with sporting events and promoting the goods and services of others.  Furthermore, defendants have named their APP, the "Ultimate Fan", which is virtually identical to Action Ink's THE ULTIMATE FAN Mark. Defendants' use of the words "Ultimate Fan", particularly in connection with the same Services identified in

2

Action Ink's Registration, has created a likelihood of confusion among the public as to the true source of Action Ink's services, and created the false impression that plaintiff and its services are in some way sponsored, sanctioned by, or associated with defendants and their web application. Additionally, defendants' wrongful use of the ULTIMATE FAN Mark has created a likelihood of confusion which gives the public the false impression that Action Ink is an infringer taking a free ride on defendants' pervasive advertising and use of the ULTIMATE FAN Mark, *i.e.* reverse confusion.

4.     Despite Action Ink's incontestable federal registration for the Mark, on September 15, 2010, NY Jets filed an application with the USPTO to register the ULTIMATE FAN Mark in connection with "downloadable computer game software via a global computer network and wireless device." (*See* printout from USPTO website, attached hereto as Exhibit A.) The downloadable computer game software, developed by Arkadium, is owned by the NY Jets. On or about October 28, 2010, upon learning of NY Jets' unauthorized use of the ULTIMATE FAN Mark, Action Ink contacted NY Jets and demanded that it immediately cease and desist further use of that Mark. Despite the fact that the NY Jets used and sought to register the virtually identical ULTIMATE FAN Mark in connection with virtually identical services (*i.e.* providing games/contests in connection with sporting events) NY Jets responded on December 1, 2010 and refused Action Ink's demand.

5.     Defendants' pervasive use of the ULTIMATE FAN Mark in connection with services that are so similar constitutes infringement. Defendant's conduct is likely to cause both direct and reverse confusion as to the affiliation and/or connection between defendants' goods and services and plaintiff's goods and services, resulting in trademark infringement and an unjust enrichment to

3

defendant. Also, defendant's actions caused the dilution of plaintiff's Mark and destroyed plaintiff's ability to use and exploit its Mark at sporting events. Plaintiff's attempt at an amicable resolution in this matter was denied, leaving plaintiff no choice but to seek relief from this Court. Plaintiff seeks, among other remedies, an accounting of defendant's profits and seeks damages for injuries that have been and will continue to be caused by defendants' use of the "Ultimate Fan" Mark in violation of the Lanham Act, federal law governing false designation of origin, and in violation of Louisiana Civil Law for trademark infringement, dilution, unfair trade practices and unjust enrichment. *See e.g.* 15 U.S.C. section 1051, *et seq.*; 15 U.S.C. section 1125.

## II. JURISDICTION AND VENUE

6. This Court has personal jurisdiction over defendants because defendants engaged in business activities in and directed to the State of Louisiana within this judicial district, and because defendants knowingly committed tortuous acts aimed at, and causing harm within the State of Louisiana and this judicial district.

7. This Court has jurisdiction over the subject matter herein pursuant to 15 U.S.C. section 1121 and 28 U.S.C. sections 1331, 1338, and 1367. Plaintiff's claims are, in part, based on violations of the Lanham Act. This Court also has jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. section 1338(b) and 1367.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391(b) and (c) because it is where plaintiff resides, because defendants transacts business in this district, and because a substantial portion of the events giving rise

to the asserted claims have occurred and continue to occur within this district. Furthermore, the damage to plaintiff and its intellectual property described herein continues to occur in this judicial district.

## III. THE PARTIES

9.    Plaintiff is a Louisiana corporation with its principal place of business located at 1515 Poydras Street, New Orleans, Louisiana 70112.

10.    Plaintiff is informed and believes, and on that basis alleges, that Defendant New York Jets, LLC, is New York limited liability company and has its principal place of business in the State of New Jersey.

11.    Plaintiff is informed and believes, and on that basis alleges, that Defendant Arkadium, Inc., is incorporated and has its principal place of business in the State of New York.

## IV. FACTUAL ALLEGATIONS

13.    Action Ink, Inc. ("Action Ink") is a sports marketing firm, which developed the Mark, THE ULTIMATE FAN.

14.    On or about March 5, 1984, Action Ink applied to the United States Patent and Trademark Office to obtain federal trademark registration for the Mark, THE ULTIMATE FAN. Action Ink's application was approved and THE ULTIMATE FAN Mark was added to the Principal Register on July 9, 1985.

15.    On or about November 4, 1991, the ULTIMATE FAN Mark became incontestable, pursuant to Section 15 of the Lanham Act (15 U.S.C. 1065).

16.    Action Ink licenses the use of the THE ULTIMATE FAN Mark to third parties and provides other promotional and marketing services to such third parties for a fee.

17.   THE ULTIMATE FAN Mark is typically used at sporting events to promote the goods and/or services of others by conducting contests at sporting events using the trademarked term THE ULTIMATE FAN.

18.   Action Ink first used the term "THE ULTIMATE FAN" on or about September 15, 1983 during an NBA basketball promotion, wherein NBA teams conducted THE ULTIMATE FAN contests.  Since that time, Action Ink has used its Mark in connection with other promotions, including Tulane University, Major League Baseball, and others.

19.   Plaintiff has expended considerable time and resources in promoting THE ULTIMATE FAN Mark, particularly in this district.

20.   As a result of these efforts, plaintiff has built significant local recognition and goodwill.

21.   Despite plaintiff's federal registration of THE ULTIMATE FAN Mark, on or about September 8, 2010, Defendants' began using the term "Ultimate Fan" in connection with their App, or web application, which they have heavily promoted throughout the world through such intermediaries as Facebook, which has more than 800 million users. The Ultimate Fan App is owned by the NY Jets and was developed by Arkadium.

22.   Despite Plaintiff's federal registration for THE ULTIMATE FAN Mark, Defendants' use the virtually identical "Ultimate Fan" Mark to attract public attention.   The "Ultimate Fan" Mark is prominently displayed in Defendants' advertisements and webpages for the Ultimate Fan App.  The "Ultimate Fan" is presented in large, bold font, often centered in the middle, or bottom of, cartoon footballs or football helmets. When Defendant's describe the Ultimate Fan App, the words "Ultimate Fan" often appear in bold font.

23.    Moreover, the Ultimate Fan App is promoted as a game allowing sport fans to compete in a contest against other sports fans in an atmosphere made to simulate being at a National Football League game. Users can host online tailgate parties and rate players online while games are being played in real-time. The contest also promotes the goods and services of others, *e.g.* by allowing users to compete on behalf of their favorite sports teams. Therefore, Defendants used the confusingly similar ULTIMATE FAN Mark, not simply to describe its App, but in connection with the same services identified by Action Ink's federal registration.

24.    Consumers are likely to be confused by Defendants' use of their Mark, ULTIMATE FAN.  This confusion, both direct and reverse, would likely cause the public to believe that the Ultimate Fan App, is in some way sponsored or sanctioned by, or associated with Action Ink's "THE ULTIMATE FAN" promotional programs and contests it conducts at sporting events. Additionally, defendants' unauthorized use of the Mark has created a likelihood of confusion which gives the public the false impression that Action Ink is an infringer upon defendants' pervasive advertising and use of THE ULTIMATE FAN Mark.

25.    Defendants did not contact Action Ink for permission to use THE ULTIMATE FAN Mark and did not pay Action Ink a fee for use of the ULTIMATE FAN Mark, thus Defendants were unjustly enriched by using a Mark that is virtually identical to plaintiff's Mark without permission.

26.    Upon learning of defendants wrongful use of the "ULTIMATE FAN" Mark,  plaintiff demanded that defendant NY Jets immediately cease and desist further use of the "ULTIMATE FAN" Mark.

27.    NY Jets responded to Action Ink's demand by asserting that it did not believe there was a likelihood of confusion.

7

28.    Defendant engaged in acts that were injurious to Action Ink. Defendant acted in bad faith and continually deceived and confused the public by using the ULTIMATE FAN Mark.   Defendant's actions destroyed Action Ink's ability to use the THE ULTIMATE FAN Mark at sporting events,   especially football, which has been the primary focus of defendants' infringing Mark.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

29.    Action Ink realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 28 of this Complaint.

31.    Plaintiff's registration of "THE ULTIMATE FAN" Mark, and its use and promotion of this Mark has generated a distinctiveness, recognition and goodwill associated with the Mark.

32.    Defendants had actual or constructive knowledge of plaintiff's ownership and registration of "THE ULTIMATE FAN" Mark.

33.    Defendants' use of the "ULTIMATE FAN" Mark are identical and/or substantially similar to how plaintiff uses "THE ULTIMATE FAN" Mark.

34.    The services that Defendants' offer under the ULTIMATE FAN Mark namely, a contest relating to sporting events and the promotion of the goods and services of others (*e.g.* by allowing users to compete on behalf of their favorite sports teams) is identical to and/or substantially similar to the services offered by Action Ink under Action Ink's THE ULTIMATE FAN Mark and is being offered through the same channels of trade and/or advertising and to the same consumer groups as Action Ink's services.

35.    Defendants' use of the virtually identical ULTIMATE FAN Mark in interstate commerce and in this district, was and is unauthorized, deliberate, willful

and in bad faith and has and will continue to have an adverse effect upon the distinctive quality of plaintiff's Mark.

36.   Defendants' use of plaintiff's Mark falsely indicates to consumers that defendants' goods and services are in some manner connected with, sponsored by, affiliated with, related to, or approved by plaintiff and is likely to cause confusion or mistake as to the source, nature, and quality of the goods and services that plaintiff and defendant are offering.

37.   And, defendants' use of the virtually identical ULTIMATE FAN Mark deprives plaintiff of the ability to control consumer perception as to the quality of the services marketed by defendants and places plaintiff's valuable reputation and goodwill into the hands of defendants, over whom plaintiff has no control.

38.   Defendants use of the ULTIMATE FAN Mark blurs and mitigates the identity-evoking quality of plaintiff's Mark.

39.   Defendants' actions destroyed Action Ink's ability to use the Mark "THE ULTIMATE FAN" at sporting events especially football and basketball, which has been the primary focus of defendant's infringing Mark.

40.   Defendants' wrongful use of the ULTIMATE FAN Mark has created a likelihood of confusion which gives the public the false impression that Action Ink is an infringer taking advantage of defendants' pervasive advertising and use of the ULTIMATE FAN Mark, *i.e.* reverse confusion.

41.   Defendants actions constitute federal trademark infringement.  (See e.g. 15 U.S.C. section 1114).

42.   The intentional nature of Defendants' acts makes this an exceptional case under 15 U.S.C. § 1117(a).

43. Action Ink has been, is now, and will be irreparably harmed by Defendants' aforementioned acts of infringement, and, unless enjoined by the Court, Defendants will continue to infringe upon Action Ink's THE ULTIMATE FAN Mark. There is no adequate remedy at law for the harm caused by the acts of infringement alleged herein.

## SECOND CAUSE OF ACTION
## <u>FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)</u>

44. Action Ink realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 43 of this Complaint.

45. Plaintiff's registration of THE ULTIMATE FAN Mark, and its use and promotion of this Mark has generated a distinctiveness, recognition and goodwill associated with the Mark.

46. Defendants' use of plaintiff's Mark falsely indicates to consumers that defendants' goods and services are in some manner connected with, sponsored by, affiliated with, related to, or approved by plaintiff and is likely to cause confusion or mistake as to the source, nature, and quality of the goods and services that plaintiff and defendant are offering.

47. Defendants' wrongful use of the ULTIMATE FAN Mark has created a likelihood of confusion which gives the public the false impression that Action Ink is an infringer exploiting defendants' pervasive advertising and use of the ULTIMATE FAN Mark, *i.e.* reverse confusion.

48. Defendants' acts constitute unfair competition, false designation of origin. (See e.g. 15 U.S.C. section 1125)

49. The intentional nature of Defendants' acts makes this an exceptional case under 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION

## STATE UNFAIR COMPETITION LAW

50.    Action Ink realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 49 of this Complaint.

51.    Defendants' conduct constitutes deceptive practices by which Defendants' goods and services have been palmed-off as those of Action Ink. Such conduct constitutes unfair competition in violation of the State of Louisiana's Unfair Competition Law.

52.    Plaintiff's registration of THE ULTIMATE FAN Mark, and its use and promotion of this Mark has generated a distinctiveness, recognition and goodwill associated with the Mark.

53.    Defendants' use of plaintiff's Mark falsely indicates to consumers that defendants' goods and services are in some manner connected with, sponsored by, affiliated with, related to, or approved by plaintiff and is likely to cause confusion or mistake as to the source, nature, and quality of the goods and services that plaintiff and defendant are offering.

54.    Defendants' wrongful use of the ULTIMATE FAN Mark has created a likelihood of confusion which gives the public the false impression that Action Ink is  the infringer wrongfully exploiting defendants' widespread advertising and use of the ULTIMATE FAN Mark, *i.e.* reverse confusion.

55.    By reason of the foregoing, Defendants have infringed and are continuing to infringe on Action Ink's state law rights in and to Action Ink's THE ULTIMATE FAN Mark, and Defendants have become unjustly enriched by such acts of infringement.

56.     Defendants' wrongful use of the ULTIMATE FAN Mark has created a likelihood of confusion which gives the public the false impression that Action Ink is an infringer taking advantage of defendants' extensive advertising and use of the ULTIMATE FAN Mark, *i.e.* reverse confusion.

57.     Defendants' acts constitute unfair competition in violation of Louisiana State law.

58.     Defendants' unlawful conduct has been and continues to be willful or willfully blind to Action Ink's rights, as Defendants have reason to know of Action Ink's rights.

59.     Action Ink has been and will continue to be irreparably harmed by Defendants' aforementioned acts of trademark infringement and unfair competition, and, unless enjoined by the court, Defendants' wrongful acts will continue. There is no adequate remedy at law for the harm caused by the acts of infringement and unfair competition alleged herein.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

60.     A judgment awarding plaintiff defendants' profits, damages sustained by plaintiff, the cost of the action and attorney fees. See for example 15 U.S.C. section 1117;

61.     A judgment awarding plaintiff sufficient funds for corrective advertising to mitigate the damage caused by defendants' wrongful and substantial advertising and public relations campaign;

62.     A judgment declaring that defendants cannot use or register the Mark the "ULTIMATE FAN";

63.    A judgment granting plaintiff such other and further relief as this Court deems just and proper.

Dated:   January 6 , 2012

                                        ECKSTEIN LAW FIRM, APC

                        By:    _____
                                        Michael L. Eckstein **(La. Bar No.5628)**
                                        1515 Poydras Street, Suite 2195
                                        New Orleans, Louisiana 70112
                                        Telephone: (504) 527-0701
                                        Facsimile: (504) 566-0040
                                        Email: mle@eck-law.com

                                        Attorneys for Plaintiff,

                                        ACTION INK, INC.